# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

AARON THOMAS BYRD,

           Petitioner,

v.

          CASE NO. 05-CV-74850-DT
          JUDGE MARIANNE O. BATTANI
          MAGISTRATE JUDGE PAUL J. KOMIVES

JAN TROMBLEY,

           Respondent.
_____/

# REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.   *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.   *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    C.   *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        1.   *The AEDPA Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        2.   *Constitutionality of the AEDPA* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
           a.  Separation of Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
           b.  Supremacy Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
           c.  Advisory Opinions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
           d.  Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
           e.  Suspension Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    D.   *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        1.   *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        2.   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
           a.  Deficient Performance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
           b.  Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    E.   *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

\*     \*     \*     \*     \*

I.     RECOMMENDATION: The Court should grant petitioner's application for the writ of habeas

corpus.

II.    <u>REPORT</u>:

A.    *Procedural History*

1.    Petitioner Aaron Thomas Byrd is a state prisoner, currently confined at the Saginaw Correctional Facility in Freeland, Michigan.

2.    On November 8, 2002, petitioner was convicted of first degree criminal sexual conduct involving a victim under 13 years of age, MICH. COMP. LAWS § 750.520b(1)(a), following a jury trial in the Calhoun County Circuit Court. The trial resulting in petitioner's conviction was the third trial on the charges, the first two trials having ended in hung juries. On December 5, 2002, he was sentenced to a term of 10-25 years' imprisonment.

3.    Petitioner filed an appeal of right in the Michigan Court of Appeals, as well as a motion for new trial in the trial court alleging ineffective assistance of counsel. After an evidentiary hearing, the trial court denied petitioner's motion for a new trial. In his appeal of right petitioner raised, through counsel the following claims:

    I.    APPELLANT BYRD WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS WHEN HE WAS IMPEACHED WITH A STALE PRIOR CONVICTION IN DIRECT CONTRAVENTION OF MRE 609(C) AND WHERE THAT CONVICTION WAS EMPHASIZED BY THE PROSECUTION TO CONVICT HIM ON A "BAD MAN" THEORY.

    A.    SINCE TEN YEARS HAD PASSED FROM CONFINEMENT, APPELLANT BYRD'S FORGERY CONVICTION WAS INADMISSIBLE UNDER MRE 609(C).

    B.    EVEN IF APPELLANT'S PRIOR CONVICTION FOR FORGERY WAS ADMISSIBLE FOR IMPEACHMENT PURPOSES, THE PROSECUTOR ERRED IN GOING BEYOND THE PROPER USAGE AND ATTEMPTING TO SHOW THAT THE PRIOR CONVICTION INDICATED APPELLANT WAS A "BAD MAN" AND IN ENTERING THE DETAILS REGARDING APPELLANT'S INCARCERATION.

II. APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE FEDERAL AND STATE CONSTITUTIONS (U.S. CONST. AMEND. VI' CONST 1963, ART 1, SEC. 20) WHERE HIS TRIAL ATTORNEY, WITH NO STRATEGIC PURPOSE, MADE SEVERAL OUTCOME-DETERMINATIVE ERRORS.

III. APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL UNDER THE STATE AND FEDERAL CONSTITUTIONS WHEN THE PROSECUTOR ENGAGED IN SEVERE AND REPEATED OUTCOME-DETERMINATIVE MISCONDUCT.

IV. APPELLANT BYRD'S DUE PROCESS CLAUSE RIGHT TO PRESENT A DEFENSE AND HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN HE WAS PREVENTED FROM PRESENTING CRITICAL EVIDENCE OF BIAS ON THE PART OF THE COMPLAINANT.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Byrd*, No. 245624, 2004 WL 1801036 (Mich. Ct. App. Aug. 12, 2004) (per curiam).

4. Petitioner, through counsel, sought leave to appeal these four issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Byrd*, 472 Mich. 907, 696 N.W.2d 710 (2005).

5. Petitioner, through counsel, filed the instant application for a writ of habeas corpus on December 22, 2005. As grounds for the writ of habeas corpus, he raises the second, third, and fourth claims raised in the state courts. He also argues that the standard of review governing his habeas application, 28 U.S.C. § 2254(d), as amended by the AEDPA, is unconstitutional.

6. Respondent filed his answer on July 7, 2006. He contends that petitioner's prosecutorial misconduct claims are barred by petitioner's procedural default, and that his remaining claims are without merit.

7. Petitioner filed a reply to respondent's answer on August 10, 2006.

B. *Factual Background Underlying Petitioner's Conviction*

Petitioner was tried three times on the charges for which he was ultimately convicted. The first two trials ended in hung juries. The evidence presented at the third trial was succinctly summarized by the Michigan Court of Appeals on petitioner's direct appeal:

> The victim, age ten at the time of trial, lived with her family (including defendant who was her step-father) during the first half of 1999. The victim testified that she usually showered in the mornings, and would wrap a towel around herself afterward. According to the victim, defendant would occasionally go into the shower with her.[FN2] On one occasion, the victim went into her mother's bedroom with defendant, who was on the bed wearing only a robe, and defendant touched the victim in her "private." Defendant had told the victim to "just relax," and then he "stuck" his "front private" inside her front "private part."

> > FN2. Defendant worked for a tow-truck company that he owned and operated, and was able to be at home during the mornings to prepare the children, including the victim, for school.

> Defendant testified on his own behalf, and denied the allegations. Defendant admitted that he sometimes rinsed the victim's hair while she was showering and her mother was not there, but denied showering with her. Following the allegations, defendant called the doctor for an appointment for the victim, and informed the doctor's office that the victim had a yellow discharge and that someone had touched her in her private parts. Upon the recommendation to report the allegations, defendant and the victim's mother reported the allegations. Defendant believed that the victim made the allegations against him because he spanked her for lying. Defendant also testified that he believed the victim's injury could have been caused by a bicycle accident. According to defendant, the victim apologized to him after she made the allegations.

> The victim was initially examined by Sherry Stricker, a physician's assistant, pursuant to the chief complaint of vaginal burning and itching, yellow discharge, and strong-smelling urine. Stricker had been informed that there was possible sexual abuse. Stricker indicated that the victim's labia were red and that there were lesions, which was consistent with the chief complaint. The victim was later examined by Dr. Steven Guertin, who found an injury described as a very deep, v-shaped notch in the victim's hymen. Dr. Guertin determined the injury was approximately one or two weeks old to one-year old. Dr. Guertin explained that the victim's injury was rare for a seven-year-old female. Dr. Guertin acknowledged that there were possible accidental causes, but that the most common cause of that type of injury was sexual or genital-to-genital contact (i.e., placing the penis in that particular area).

*Byrd*, 2004 WL 1801036, at *1, slip op. at 1-2.

C.    *Standard of Review*

1.      *The AEDPA Standard*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694.  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694.  However,

"[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

2.      *Constitutionality of the AEDPA*

Notwithstanding the above standard of review, petitioner contends that he is entitled to *de novo* review of his federal constitutional claims because § 2254(d)(1), as amended by the AEDPA, is unconstitutional. Specifically, petitioner contends that the AEDPA violates: (1) the separation of powers; (2) the Supremacy Clause; (3) the Article III case or controversy requirement by mandating the issuance of advisory opinions; (4) the Due Process Clause of the Fourteenth Amendment; and (5) the Suspension Clause of Art. I, § 9. The Court should conclude that these claims are without merit, and that the AEDPA standard of review therefore governs petitioner's claims.

### a. Separation of Powers

Noting that "[i]t is emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803), petitioner argues that the amended § 2254(d)(1) violates the separation of powers by mandating the law to be applied by federal courts, removing their power to adjudicate constitutional issues. This argument was soundly rejected by the Fourth Circuit, which explained:

> In amending section 2254(d)(1), Congress has simply adopted a choice of law rule that prospectively governs classes of habeas cases; it has not subjected final judgments to revision, nor has it dictated the judiciary's interpretation of governing law and mandated a particular result in any pending case. And amended section 2254(d) does not limit any inferior federal court's independent interpretive authority to determine the meaning of federal law in any Article III case or controversy. Under the AEDPA, we are free, if we choose, to decide whether a habeas petitioner's conviction and sentence violate any constitutional rights. Section 2254(d) only places an additional restriction upon the scope of the habeas remedy in certain circumstances. *Lindh*, 96 F.3d at 872 ("[r]egulating relief is a far cry from limiting the interpretive power of the courts, however, and Congress has ample power to adjust the circumstances under which the remedy of the writ of habeas corpus is deployed."). As the Seventh Circuit pointed out in *Lindh* in great detail, such a limitation upon the scope of a remedy is entirely ordinary and unexceptionable, even when the remedy is one for constitutional rights. See *Lindh*, 96 F.3d at 870-73; *United States v. Leon*, 468 U.S. 897 (1984) (good faith exception to Fourth Amendment exclusionary rule); *Nix v. Williams*, 467 U.S. 431 (1984) (independent discovery doctrine); *Stone v. Powell*, 428 U.S. 465 (1976) (Fourth Amendment claims that were capable of full and fair litigation in state court are not generally cognizable in federal habeas review); *Teague v. Lane*, 489 U.S. 288

(1989) (new rules not made retroactive are not cognizable on federal habeas review); *Anderson v. Creighton*, 483 U.S. 635 (1987) (qualified immunity to damages actions claiming official action violated constitutional liberties). Moreover, even if section 2254(d) does limit the interpretive power of the lower federal courts in some sense, that limitation is tantamount to other such choice of law limitations which are widely accepted and have never been thought to raise Article III problems. *See Lindh* at 870-73 (discussing non-constitutional contexts-such as res judicata, *Erie*, and federal court certification of state law issues-where federal courts are often bound by another tribunal's interpretation of law).

*Green v. French*, 143 F.3d 865, 874-75 (4th Cir. 1998) (parallel citations omitted), *abrogated on other grounds by Williams v. Taylor*, 529 U.S. 362 (2000).

Or, as more succinctly stated by the Ninth Circuit, "[s]ection 2254(d) merely limits the source of clearly established law that the Article III court may consider, and that limitation served to govern prospectively class of habeas cases rather than offend the court's authority to interpret the governing law and to determine the outcome in any pending case." *Duhaime v. Ducharme*, 200 F.3d 597, 601 (9th Cir. 2000); *see also*, *Evans v. Thompson*, 518 F.3d 1, 4-10 (1st Cir. 2008). For these reasons, the Court should reject petitioner's claim that the AEDPA standard of review violates the separation of powers by encroaching on the Court's exercise of the judicial power.

### b. Supremacy Clause

Petitioner next argues that the AEDPA standard violates the Supremacy Clause, U.S. CONST. art. VI, § 2. This claim is without merit. Nothing in the AEDPA subjugates the Constitution to state law. As the Supreme Court has often noted, the state courts, as co-equal guardians of federal constitutional rights, are perfectly capable of passing on federal constitutional questions. *See, e.g.*, *Rose v. Lundy*, 455 U.S. 509, 518 (1982); *Stone v. Powell*, 428 U.S. 465, 494 n.35 (1976); *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 341-44 (1816). And, under the Supremacy Clause, state courts are obligated to enforce the Constitution above state law to the contrary. *See Howlett v. Rose*, 496 U.S. 356, 367-39 (1990); *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 340-41 (1816).

Nothing in the AEDPA changes this rule of law. The AEDPA does, to be sure, require that federal courts give deference to the federal constitutional decisions of the state courts. This, however, does not offend the Supremacy Clause, which is "concerned with promoting the supremacy of federal law, not federal courts." *Nashoba Communications Ltd. Partnership No. 7 v. Town of Danvers*, 893 F.2d 435, 440 (1st Cir. 1990). In short, the AEDPA standard of review does not violate the Supremacy Clause because that Clause "is concerned about a conflict between state and federal law, not between state and federal judges. Indeed, to say, as the Clause does, that federal law shall be 'Supreme . . . any thing in the Constitution or laws of any State to the Contrary notwithstanding' is to say nothing at all about the respective roles of the state and federal courts." *Mueller v. Angelone*, 181 F.3d 557, 572 (4th Cir. 1999) (upholding § 2254(d)(1) against Supremacy Clause challenge); *see also*, *Evans*, 518 F.3d at 8 n.3. Accordingly, the Court should conclude that § 2254(d)(1) does not violate the Supremacy Clause.

### c. Advisory Opinions

Petitioner next contends that § 2254(d)(1) violates Article III of the Constitution by requiring federal courts to issue advisory opinions. Petitioner argues: "Under the statute, a federal court's conclusion that a state court wrongly (but not unreasonably) applied the Constitution has no more weight than a mere advisory opinion; it binds nobody and affords relief to nobody. As such, it is a classic advisory opinion that is squarely precluded under Article III of the Constitution." Pet'r's Br., at 74-75. Even assuming that this is true, however, nothing in the AEDPA requires a federal court to determine whether a state court wrongly, as opposed to unreasonably, applied the Constitution. A federal court may, and the courts often do, dispose of a habeas case merely by assessing the reasonableness of the state determination, without ever rendering an opinion on the ultimate correctness of the state court decision. *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

In any event, any determination of the merits of the underlying constitutional claim as part of the reasonableness inquiry under § 2254(d)(1) does not amount to an advisory opinion. The underlying constitutionality may decide the case, for if the particular claim is without merit as a matter of federal constitutional law, it necessarily follows that the state court's rejection of the claim was reasonable. At worst, a court's determination on the underlying constitutional question would be dictum, but dictum is not itself an unconstitutional advisory opinion. *See Nelson v. Heiss*, 271 F.3d 891, 896 n.7 (9th Cir. 2001) ("Perhaps some of what the district court said was dicta; it was not an advisory opinion."); Ronald J. Krotoszynski, Jr., *Constitutional Flares: On Judges, Legislatures, and Dialogue*, 83 MINN. L. REV. 1, 8 n.27 (Nov. 1998) (""Essentially, an advisory opinion consists of formal, binding advice from a court of law to other government officials or the general public in the absence of a live case or controversy pending before the court. This definition would not encompass other forms of judicial advice, including dicta, alternative holdings, and the like, which are admittedly in some sense precatory in nature."); Evan Tsen Lee, *Deconstitutionalizing Justiciability: The Example of Mootness*, 105 HARV. L. REV. 603, 648-49 (Jan.1992) ("It is clear that dicta-whether or not courts deem it to constitute an 'advisory opinion'-run afoul of no constitutional or jurisdictional barrier."). Accordingly, petitioner cannot show that the AEDPA requires courts to issue unconstitutional advisory opinions. *See Van Tran v. Lindsey*, 212 F.3d 1143, 1155 n.17 (9th Cir. 2000).

### d. Due Process

Petitioner next argues that the AEDPA standard of review violates the Due Process Clause. Specifically, he argues that because the historic role of habeas corpus is to provide redress for denials of due process, and because some violations of due process are not remediable under the AEDPA–*i.e.*, those due process violations which were wrongly, but not unreasonably, applied or created by the state

courts–the standard of review itself violates due process.  This argument is likewise without merit.  Contrary to petitioner's argument, under the AEDPA standard of review he "is not denied a forum for the vindication of his constitutional rights.  The Court still has the power to issue the writ, albeit under more tightly circumscribed conditions." *Perez v. Marshall*, 946 F. Supp. 1521, 1531 (S.D. Cal. 1996), *aff'd*, 121 F.3d 716 (9th Cir. 1997).  In particular, no due process violation can be shown in light of the historical power of Congress and the courts to impose limitations on the scope of habeas relief.  *See Graham v. Johnson*, 168 F.3d 762, 787-88 (5th Cir. 1999) (upholding AEDPA restriction on successive petitions against due process challenge).  Accordingly, the Court should conclude that § 2254(d)(1) does not violation petitioner's right to due process of law under the Fourteenth Amendment.

### e.  Suspension Clause

Finally, petitioner contends that the AEDPA standard of review constitutes an unconstitutional suspension of the writ of habeas corpus, in violation of Article I, § 9.  This claim is also without merit.  The Supreme Court has "long recognized that 'the power to award the writ by any of the courts of the United States, must be given by written law," and . . . that judgments about the proper scope of the writ are 'normally for Congress to make.'"  *Felker v. Turpin*, 518 U.S. 651, 664 (1996) (quoting, respectively, *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 94 (1807) and *Lonchar v. Thomas*, 517 U.S. 314, 323 (1996)).  *Felker*, which uphold the AEDPA's restrictions on successive petitions against a Suspension Clause challenge, teaches that "to alter the standards on which writs issue is not to 'suspend' the privilege of the writ."  *Lindh*, 96 F.3d at 867.  The AEDPA's alteration of the standard of review does nothing more.  *See Evans*, 518 F.3d at 12; *Green*, 143 F.3d at 875 (amendment to § 2254(d) "does not suspend the privilege of the writ, but rather, represents a modest congressional alteration of the standards pursuant to which the writ issues."); *cf. Felker*, 518 U.S. at 664 (upholding

successive petitioner provision which in part codified existing law and in part "further restricts the availability of relief to habeas petitioners.").

The AEDPA does not suspend the writ as it was known at the time of the Founding, and "[a]ny suggestion that the Suspension Clause forbids every contraction of the powers bestowed by Congress in 1885, and expanded by the 1948 and 1966 amendments to § 2254, is untenable. The Suspension Clause is not a ratchet." *Id.* at 868; *see also*, Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. CHI. L. REV. 142, 170 (1970) ("It can scarcely be doubted that the writ protected by the suspension clause is the writ as known to the framers, not as Congress may have chosen to expand it, or, more pertinently, as the Supreme Court has interpreted what Congress did."). "In the 135 years since Congress first enacted a habeas corpus statute-that is to say, a statute that would grant federal jurisdiction allowing collateral attacks on state court judgments of conviction-the award of habeas relief has both expanded and contracted. Because federal courts are bound by the terms on which Congress sees fit to permit relief, we have no constitutional or other jurisprudential basis to be reluctant to accord state court decisions the full degree of deference that Congress intended and that the plain language of the statute requires." *Neal v. Puckett*, 286 F.3d 230, 248 (5th Cir. 2002) (en banc) (Jolly, J., concurring). In light of the nature of the writ at common law, the historical power of Congress and the courts to alter the nature and scope of the writ, and the fact that § 2254(d)(1) merely alters the standards on which the writ will issue, every court that has considered the issue has rejected a Suspension Clause challenge to the AEDPA standard of review. *See Evans*, 518 F.3d at 12; *Olona v. Williams*, 13 Fed. Appx. 745, 747 (10th Cir. 2001); *Houston v. Roe*, 177 F.3d 901, 906 (9th Cir. 1999); *Green*, 143 F.3d at 875-76; *Lindh*, 96 F.3d at 867-68.

In short, the Court should conclude that each of petitioner's constitutional challenges to § 2254(d)(1), as amended by the AEDPA, is without merit. Accordingly, the Court should conclude

that petitioner's claims are governed by the standard of review set forth in § 2254(d)(1) and detailed above.

D.      *Ineffective Assistance of Counsel*

Petitioner contends that he was denied the effective assistance of trial counsel in a number of respects. Specifically, petitioner contends that counsel failed to: properly prepare for trial (by reviewing prior trial transcripts and investigating expert witnesses); object to the introduction of his prior criminal record and the instances of prosecutorial misconduct; develop testimony at trial; and lay a foundation for testimony from petitioner's prior trial counsel. Because counsel's failures to object to the introduction of petitioner's prior criminal record and investigate expert testimony to rebut the prosecution's case rendered counsel constitutionally ineffective, and because the court of appeals's contrary conclusion was unreasonable in light of the record, the Court should conclude that petitioner is entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.    *Analysis*

In this case, counsel made a number of errors for which there is a reasonable probability that the result of the proceeding would have been different had counsel performed effectively.

*a. Deficient Performance*

Turning first to counsel's performance, counsel was deficient in several respects. First, counsel was ineffective for failing to object to the introduction of petitioner's prior criminal conviction for forgery under Rule 609(c).[1] At the evidentiary hearing, counsel testified that he was aware of the ten-year rule reflected in Rule 609(c), and that there was no strategic reason to allow the forgery conviction to come into evidence if there was any way to keep it out of evidence. *See* Ginther Hr'g Tr., Vol. II, at 6. He also agreed with petitioner's post-conviction counsel that his failure to argue the ten-year rule was an oversight. *See id.* The Michigan Court of Appeals did not hold that

---

[1]Counsel actually brought out the conviction himself. He did so, however, to ameliorate the effect of the conviction.

counsel's failure to challenge that admissibility of the conviction was the result of a deliberate, reasonable trial strategy. Rather, the court of appeals found that counsel's performance was not deficient because any objection would have been novel. *See Byrd*, 2004 WL 1801036, at *4. This conclusion is unreasonable in light of the state of the law at the time of petitioner's trial.

Rule 609(a) permits the introduction of evidence of a witness's conviction for a crime involving an element of dishonesty or false statement for the purpose of attacking the witness's credibility. *See* MICH. R. EVID. 609(a)(1). There is no dispute that petitioner's forgery conviction was an admissible conviction under Rule 609(a)(1) to attack his credibility. However, Rule 609 also provides that "[e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." MICH. R. EVID. 609(c). It was also undisputed that petitioner was released from prison on that conviction on October 7, 1992, when he was placed on a tether program. Under the program, petitioner was required to be in his home between midnight and 4:00 a.m. and he was prohibited from leaving the state, but otherwise petitioner had unrestricted freedom of movement. *See Byrd*, 2004 WL 1801036, at *3. During this time, petitioner was still subject to his criminal sentence, and was not paroled until 1994. Because petitioner's third trial occurred in November 2002, the question was whether petitioner's placement on the tether constituted "the release of [petitioner] from confinement" under Rule 609(c). Although the court of appeals did not resolve this question, the court explained that resolution of the question was open to debate because, in addition to meaning physical confinement in prison, "confinement" can also be defined as subject to restriction short of physical imprisonment. *See Byrd*, 2004 WL 1801036, *2-*3.

It is true, as the Michigan Court of Appeals explained, that there was no Michigan law directly

addressing this issue at the time of petitioner's trial. It is equally true, however, that the issue of whether release on a tether constitutes "confinement" under Rule 609(c) was far from novel. As the court of appeals itself recognized, a long line of Michigan cases in other contexts "has interpreted the term 'confinement' narrowly, and has determined that placement on the tether program is not the equivalent of confinement in prison or jail." *Byrd*, 2004 WL 1801036, at \*2 (citing *People v. Britt*, 202 Mich. App. 714, 509 N.W.2d 914 (1993); *People v. Reynolds*, 195 Mich. App. 182, 489 N.W.2d 128 (1992); *People v. Smith*, 195 Mich. App. 147, 489 N.W.2d 135 (1992); *People v. Wagner*, 193 Mich. App. 679, 485 N.W.2d 133 (1992); *People v. Granquist*, 183 Mich. App. 343, 454 N.W.2d 207 (1990)). And, contrary to the court of appeal's statement that this issue had not been previously determined in another jurisdiction, the federal courts applying the identical Rule 609(b), and state courts applying analogous state rules, have unanimously concluded that "confinement" in Rule 609 "means release from actual imprisonment," and does not include non-incarceration restraints such as probation or parole. *Bizmark, Inc. v. Kroger Co.*, 994 F. Supp. 726, 728 (W.D. Va. 1998); *see also*, *United States v. Butch*, 48 F. Supp. 2d 453, 465 (D.N.J. 1999); *Wilson v. Sico*, 713 A.2d 923, 924 (Del. 1998); *State v. Ihnot*, 575 N.W.2d 581, 585 n.2 (Minn. 1998) ("'Confinement' does not include probation, but is limited to incarceration."). Although the Michigan courts would not be bound by these determinations of other jurisdictions, it is doubtful that the court of appeals, if properly presented with this issue, would come to a contrary conclusion in light of that court's construction of the word "confinement" in other statutes and the well-established principle that decisions of federal courts interpreting analogous federal rules of evidence are persuasive in interpreting the Michigan Rules of Evidence, *see People v. Malone*, 445 Mich. 369, 386, 518 N.W.2d 418, 425 (1994); *People v. Finley*, 161 Mich. App. 1, 8 n.2, 410 N.W.2d 282, 287 n.2 (1987), particularly where the language of the rules is, as here, identical, *see Donkers v. Kovach*, 277 Mich. App. 366, 372 n.3, 745 N.W.2d

16

154, 158 n.3 (2007).

It is true that, as a general matter, counsel has no duty to present novel theories or arguments. Counsel does, however, have a duty to conduct a reasonable investigation of the law and facts applicable to the particular case. *See Strickland*, 466 U.S. at 690-91. A claim is not "novel," however, simply because the precise issue has not previously been decided. Here, a reasonably competent counsel would have recognized the ten-year rule as an issue, particularly in light of the fact that it was an issue in the first two trials. By counsel's admission, his failure to do so reflected no conscious decision that the issue would not succeed, but was simply an oversight. Further, had counsel investigated the matter, the plain language of the rule coupled with the unanimous view of the federal (and other state) courts would have provided counsel a "'reasonable basis' upon which to develop [this] legal theory." *Reed v. Rose*, 468 U.S. 1, 17 (1984) (discussing whether claim was sufficiently novel to overcome procedural bar).

The conclusion that counsel was deficient with respect to petitioner's prior conviction is buttressed by counsel's related deficiency in failing to object to the prosecutor's misuse of petitioner's prior conviction as "bad man" evidence by the prosecutor. The prosecutor repeatedly focused on petitioner's prior conviction during closing argument. Notably, in arguing that petitioner was not worthy of belief, the prosecutor did not argue that this was so because petitioner was convicted of forgery in particular, but only because he was a felon. *See* Trial Tr., Vol. I, at 167, 168. That is, the prosecutor did not explain why petitioner's particular conviction made him unworthy of belief, but only focused on the fact that petitioner was "a convicted felon whose [sic] gone to prison." *Id*. at 167. Even if these comments merely hewed close to the line between proper and improper comment, rather than crossing it, the prosecutor did cross the line in suggesting that the jury should convict petitioner solely on the basis of petitioner's prior crime: "Did [defense counsel] ever mention the fact, at all,

17

during his closing argument, what type of person Mr. Byrd is? Did we ever hear him mention the fact that, oh, he's a convicted felon, but please don't take that into account whatsoever?" *Id.*, Vol. II, at 25. Through this comment, "the prosecutor improperly implied that the jurors should consider [petitioner's] unseemly character when rendering their verdict." *Washington v. Hofbauer*, 228 F.3d 689, 699 (6th Cir. 2000). Counsel's failure to challenge these improper comments on their own constitute deficient performance, and at a minimum buttress the conclusion that counsel was ineffective in his overall handling of the Rule 609 impeachment evidence.

More importantly, counsel was deficient in failing to investigate and present an expert witness to challenge the opinions offered by Dr. Guertin, who performed a physical examination of the victim, and Dr. Randy Haugen, a psychologist who evaluated the victim. Dr. Guertin testified that the notch in the victim's hymen was consistent with sexual assault and was unlikely to result from an accident, and that he did not ask the complainant for a further explanation of her injuries. *See* Trial Tr., Vol. II, at 28-30. Counsel conducted no investigation into this medical testimony, notwithstanding the fact that there was evidence of a "straddle" type bicycle injury presented at petitioner's second trial, and a significant body of scientific literature describing straddle injuries to the hymen in the absence of sexual abuse. *See Lindstadt v. Keane*, 239 F.3d 191, 201-02 (2d Cir. 2001). More significantly, counsel conducted no independent investigation with regard to Dr. Haugen's testimony that the complainant's testimony, symptoms, and behavior in the courtroom were consistent with her having been the victim of sexual abuse. *See* Trial Tr., Vol. II, at 52-57.

The court of appeals found that counsel's decision not to present expert testimony on these matters was a strategic decision. The record, however, belies this assertion so completely as to render the court of appeals's determination unreasonable. In the first place, counsel himself disavowed the prosecutor's suggestion that the failure to consult with an expert was the result of a strategic decision,

*see* Ginther Hr'g Tr., Vol. II, at 23-26, testifying both that the decision not to consult an expert resulted in part from his lack of time to prepare for trial, *see id*., and that he simply did not consider having a psychiatric expert either speak with petitioner or review the victim's comments, *see id*. at 15-16. Further, counsel could not have made a reasonable strategic decision not to call experts because he never even explored that option. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The failure to even consult an expert violated counsel's duty to conduct a reasonable, diligent investigation of the case. *See Wiggins v. Smith*, 539 U.S. 510, 522 (2003). As the Second Circuit has explained, "[i]n sexual abuse cases, because of the centrality of medical testimony, the failure to consult with or call a medical expert is often indicative of ineffective assistance of counsel. This is particularly so where the prosecution's case, beyond the purported medical evidence of abuse, rests on the credibility of the alleged victim, as opposed to direct physical evidence such as DNA, or third party eyewitness testimony." *Gersten v. Senkowski*, 426 F.3d 588, 607 (2d Cir. 2005). Or, as also explained by the Second Circuit:

> [W]hen a defendant is accused of sexually abusing a child and the evidence is such that the case will turn on accepting one party's word over the other's, the need for defense counsel to, at a minimum, consult with an expert to become educated about the 'vagaries of abuse indicia' is critical. The importance of consultation and pretrial investigation is heightened where, as here, the physical evidence is less than conclusive and open to interpretation.

*Eze v. Senkowski*, 321 F.3d 110, 128 (2d Cir. 2003) (citations omitted). And this reasoning applies equally to situations involving expert child abuse victim profile testimony.

In short, in a case which turned almost entirely on the credibility of the complainant and victim, counsel wholly failed to investigate the expert testimony which provided support for the complainant's version of events. As counsel himself conceded, there was no strategic or tactical

reason for this omission, and the deficiencies in counsel's performance in this regard is clear in light of the clearly established law, set forth in *Strickland* and its progeny, requiring counsel to conduct a diligent pretrial investigation. The court of appeals's contrary determination, therefore, was an unreasonable application of the first prong of the *Strickland* test. *See Gersten*, 426 F.3d at 610-11; *Pavel v. Hollins*, 261 F.3d 210, 222-25 (2d Cir. 2001); *Holsomback v. White*, 133 F.3d 1382, 1387-88 (11th Cir. 1998).

### b. Prejudice

In assessing whether petitioner was prejudiced by his counsel's deficient performance, the Court "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695; *see also*, *Hodge v. Hurley*, 426 F.3d 368, 376 n.17 (6th Cir. 2005) ("the prejudice determination is necessarily affected by the quantity and quality of other evidence against the defendant."). Further, the Court must consider the aggregate affect of counsel's deficient performance. *See Daniels v. Woodford*, 428 F.3d 1181, 1214 (9th Cir. 2005); *Floyd v. Hanks*, 364 F.3d 847, 850 (7th Cir. 2004); *Cargle v. Mullin*, 317 F.3d 1196, 1212 (10th Cir. 2003). Under these standards, the court of appeals's determination that petitioner was not prejudiced by counsel's errors was unreasonable.

The case against petitioner was not particularly strong, as evidenced by the fact that two prior trials ended in hung juries. In its entirety, the prosecution's evidence consisted of the victim's testimony, the medical evidence of the notch in her hymen, and Dr. Haugen's testimony corroborating the victim's behavior as being consistent with that of a sexual abuse victim. The prosecutor's closing argument focused extensively on the credibility contest, suggesting that the victim was credible because her testimony was corroborated by the testimonies of Dr. Guertin and Dr. Haugen, and that petitioner was not credible because his alleged emotional breakdown in front of his pastor was indicative of guilt and because he was a convicted felon. As in *Gersten*, discussed above, there was

no physical evidence or third-party eyewitness testimony indicative of petitioner's guilt. In light of the nature of the prosecutor's evidence, the prejudicial effect of counsel's errors is apparent, even when separately considered.

First, the prosecutor repeatedly attacked petitioner's credibility on the basis of his prior conviction. The prosecutor did not argue that petitioner's testimony was inherently incredible or contradictory, nor did he argue that it was contradicted by any physical evidence. In light of the prosecutor's own focus on the prior conviction, there is a reasonable probability that the jury's assessment of petitioner's credibility was based primarily, if not exclusively, on the existence of the prior conviction. Thus, had the conviction been excluded, there is a reasonable probability that the result of the proceeding would have been different.

Second, there is a reasonable probability that the result of the proceeding would have been different had counsel investigated and presented expert testimony to contradict the testimonies of Dr. Guertin and Dr. Haugen. The Michigan Court of Appeals concluded that there was no prejudice because "trial counsel conducted extensive cross-examination of each of the witnesses in an evident attempt to discredit their testimony." *Byrd*, 2004 WL 1801036, at *5. This determination was not reasonable in light of the evidence presented. The few begrudging concessions which counsel was able to elicit from the prosecution's experts was no substitute for contradictory, scientifically grounded evidence which wholly contradicted their testimony. In particular, at the evidentiary hearing on petitioner's motion for new trial, petitioner presented the testimony of Dr. Michael Abramsky, a board certified clinical and forensic psychologist. His testimony called into question the entirety of Dr. Haugen's testimony regarding the victim's behavior. In particular, Dr. Abramsky testified that:

- Dr. Haugen's methodology involving looking at the victim's symptomology several

months after the sexual abuse and at the time of trial "has been totally discredited," Ginther Hr'g Tr., Vol. I, at 13;

- the victim's symptoms were non-discriminatory and could have resulted from other factors, including the pressure of appearing at trial, *see id*.;

- Dr. Haugen's testimony that the victim's agitation prior to trial and her behavior on the stand were consistent with abuse was "absolutely mistaken" and "totally irresponsible," *id*. at 16-18;

- intelligence testing on the victim should have been done to explore the suggestibility of the victim, *see id*. at 18-19;

- Dr. Haugen's testimony that a child would be matter of fact and show no reluctance or fear if she was lying was "absurd" in light of numerous studies indicating the impossibility of determining truth-telling from emotional states, *see id*. at 19-20;

- the vagueness of the victim's responses indicated a problem with veracity because "in verified cases of abuse . . . children can be much more specific about what occurred," *id*. at 21;

- 75% of abuses claims arising out of family conflicts are false, *see id*. at 23;

- the lack of documentation with respect to both the victim's symptoms at the time fo the offense and the investigative process rendered it such that "we don't really know whether the answers [given by the complainant] could even be valid or not," *id*. at 24-25;

- petitioner's alleged emotional breakdown in front of his pastor was ambiguous and not necessarily indicative of guilt, *see id*. at 28;

- the complainant's claim that the abuse was committed when others were in the house coupled with the lack of any "seduction sequence" rendered "a low probability" that the crime occurred, *see id.* at 28-30.[2]

---

[2]Dr. Abramsky also testified that petitioner did not exhibit any of the characteristics suggestive of type II characterological disorder common to most sex offenders, *see id*. at 11, 30-31 Although the court of appeals did not separately discuss this offender profile evidence, the trial court questioned whether it would have been admissible but ultimately concluded that even if it was admissible petitioner was not prejudiced. Dr. Abramsky testified that he had done research and reviewed the literature in this area, and that "the factors which we've isolated have been shown an [sic] objective, peer-published articles that have been replicated by at least two or three other sources that were pretty firm about what these characteristics are or are not," Ginther Hr'g Tr., Vol. I, at 28 and the Michigan Court of Appeals has permitted the prosecution to introduce

Contrary to the court of appeals's reasoning, nothing elicited on the cross-examination of Dr. Guertin or Dr. Haugen approached this testimony. Dr. Haugen did admit that lying might produce the symptoms exhibited by the complainant, but did so only begrudgingly and then only based on "intuition," rather than the scientific certainty with which he testified on direct examination. *See* Trial Tr., Vol. II, at 69, 73. He was also questioned as to the investigatory protocol, but disclaimed any knowledge of why an investigation protocol for child sexual abuse cases had been developed. *See id*. at 84. In all other respects, the substance of Abramsky's testimony was wholly unexplored on cross-examination. The entirety of the prosecution's case was based on the victim's testimony as supported by the testimony of Dr. Guertin's and Dr. Haugen's testimony. A properly called and examined expert, as shown by Dr. Abramsky, could have significantly undermined the objective expert testimony buttressing the victim's credibility in a way that cross-examination could not, and indeed did not, do. *See Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir. 2001). Because the entire case hinged on the credibility of the complainant and petitioner, the court of appeals was unreasonable in concluding that petitioner was not prejudiced by counsel's failure to consult with and call an expert witness to challenge that testimony of Dr. Guertin and Dr. Haugen. *See Gersten*, 426 F.3d at 611-12, 613-14; *Pavel*, 261 F.3d at 226-28; *Holsomback*, 133 F.3d at 1388-89. Accordingly, the Court should

---

such offender profile testimony against a defendant under Rule 702. *See People v. Ackerman*, 257 Mich. App. 434, 444-45, 669 N.W.2d 818, 825-26 (2003). Nevertheless, in the converse situation, the court of appeals has refused to permit sex offender profile evidence when offered by the defendant, in one case rejecting similar testimony from Dr. Abramsky. *See People v. Schneider*, No. 273421, 2007 WL 1202322, at *4-*6 (Mich. Ct. App. Apr. 24, 2007) (per curiam); *People v. Dobek*, 274 Mich. App. 58, 94-104, 732 N.W.2d 546, 571-76 (2007). Because it is questionable whether this offender profile evidence would have been admitted, I do not consider it in analyzing the prejudice issue.

conclude that petitioner is entitled to habeas relief on his ineffective assistance of counsel claim.[3]

E.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's ineffective assistance of counsel claim resulted in a decision which involved an unreasonable application of clearly established federal law as set forth in *Strickland*.  Accordingly, the Court should grant petitioner's application for the writ of habeas corpus, and order the state to either retry petitioner within 120 days or release him.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by

---

[3]Because petitioner does not raise a sufficiency of the evidence or double jeopardy claim which, if meritorious, would preclude retrial, my resolution of the ineffective assistance of counsel claim makes it unnecessary to consider petitioner's remaining claims, including his remaining ineffective assistance of counsel claims.

motion and order such page limit is extended by the Court. The response shall address specifically,

and in the same order raised, each issue contained within the objections.


                                    s/Paul J. Komives
                                    PAUL J. KOMIVES
                                    UNITED STATES MAGISTRATE JUDGE
Dated: 5/19/08


The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record by electronic
means or U.S. Mail on May 19, 2008.

                          s/Eddrey Butts
                          Case Manager